| Date Signed:<br>October 23, 2013 |  | SO ORDERED.<br><br>Robert J. Faris<br>United States Bankruptcy Judge |

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re Maui Industrial Loan & Finance Company, Inc.,<br><br>   Debtor. | Case No. 10-00235<br>Chapter 7 |
| Dane S. Field,<br><br>   Plaintiff,<br><br> vs.<br><br>Kenneth N. Kaminaka and KK7, LLC,<br><br>   Defendants. | Adv. Pro. No. 12-90014<br><br><br><br><br>Re: Docket Nos. 32, 35 |

### MEMORANDUM OF DECISION CONCERNING PLANTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

  In this adversary proceeding, the chapter 7 trustee of a company that operated a Ponzi scheme, Maui Industrial Loan & Finance Company, Inc., seeks to recover a $240,000 transfer to the defendants.  Both the defendants and the trustee

have moved for summary judgment.  I conclude that there remains an issue of material fact as to the defendant's good faith when he accepted the money.

**Facts**

Lloyd Kimura was the principal of Maui Industrial and Wailuku Tire Center, LLC.  The defendant, Kenneth Kaminaka, owned an auto parts business.  Mr. Kaminaka's co-defendant, KK7, LLC, is a limited liability company Mr. Kaminaka formed to facilitate a real estate deal with Mr. Kimura.

Mr. Kaminaka and the trustee have submitted versions of the historical facts that vary in some respects.  (For the reasons set out in the discussion section of this decision, I conclude that most of the differences are not relevant.)

Mr. Kaminaka testified that, in 2004, Mr. Kimura owned a vacant parcel of land in Kihei.  The trustee has established, however, that Mr. Kimura did not obtain title to that property until early 2005.  It is possible that Mr. Kimura had rights in the property in 2004, but the record is silent on that point.

Mr. Kaminaka testified that the land was subject to coastal resource protection laws and could not be developed without a Special Management Area (SMA) permit.  Mr. Kaminaka testified that Mr. Kimura did not want to expend time and effort obtaining an SMA permit.  The trustee does not dispute these points.

U.S. Bankruptcy Court - Hawaii   #12-90014   Dkt # 45   Filed 10/23/13   Page 2 of 12

Mr. Kaminaka testified that, in 2004, he entered into an oral contract with Mr. Kimura. The two agreed that Mr. Kimura would sell Mr. Kaminaka the property for $384,848. After purchasing the land, Mr. Kaminaka would then obtain the necessary zoning and permitting approvals. Finally, he would resell the property to Mr. Kimura.

In contrast, the trustee has offered a copy of a written agreement, dated February 24, 2004, and signed by Mr. Kimura and Mr. Kaminaka, pursuant to which Mr. Kimura granted to Mr. Kaminaka the right to buy the property for $384,848. The agreement provides that "this right to purchase will expire on January 2, 2005." The agreement also provides that Mr. Kaminaka could pay the purchase price by providing auto parts to Mr. Kimura's tire store. The agreement is inconsistent with Mr. Kaminaka's testimony because it is written, it appears to provide for an option to purchase, and it does not mention a repurchase of the property by Mr. Kimura. The trustee also points out that there is no evidence that Mr. Kaminaka formally exercised the right to purchase.

Mr. Kaminaka testified that he paid for the property by mid-2005 by supplying Mr. Kimura's business, Wailuku Tire Center, with auto parts in an amount totaling the purchase price. The trustee does not dispute this.

On September 29, 2004, one of Mr. Kaminaka's companies applied for the

3

U.S. Bankruptcy Court - Hawaii  #12-90014  Dkt # 45  Filed 10/23/13  Page 3 of 12

SMA permit. Mr. Kaminaka signed the application as the owner of the property, but the deed attached to the application showed that title was in an unrelated company, Kihei Franks Hui. Thus, Mr. Kaminaka apparently knew by late 2004 that Mr. Kimura did not have title to the property which he had agreed to sell to Mr. Kaminaka.

On February 11, 2005, the deed of the property from Kihei Franks Hui to Mr. Kimura was recorded.

On April 20, 2005, Mr. Kimura granted a mortgage on the property to secure a bank loan of $300,000.00.

In January 2006, Mr. Kaminaka obtained the SMA permit.

As is noted above, Mr. Kaminaka testified that, in 2004, Mr. Kimura orally agreed to repurchase the property from him. The trustee has offered a copy of a written agreement, dated June 18, 2006, and which Mr. Kimura and Dennis Hinahara agreed to purchase the property from Mr. Kaminaka for $480,000. The closing date was set at August 15, 2007.

On September 19, 2007, Mr. Kimura paid $240,000 of the purchase price to Mr. Kaminaka. This is the transfer which the trustee seeks to avoid and recover.

On November 13, 2008, Mr. Kaminaka's company filed two lawsuits against Mr. Kimura and others, seeking to enforce the 2004 and 2006 agreements.

4

Mr. Kaminaka testified that the parties settled those cases, but the terms of the settlement are not in the record of this case.

Maui Industrial filed for bankruptcy on January 28, 2010. Plaintiff Dane S. Field ("Trustee") was appointed trustee in the chapter 7 case.

Mr. Kimura was charged in federal court with operating Maui Industrial as a Ponzi scheme in violation of federal law. On January 5, 2011, Mr. Kimura pled guilty in federal court and executed a plea agreement. Mr. Kimura admitted that he operated a Ponzi scheme through Maui Industrial starting in 1986.

## Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), Fed. R. Bankr.P. 7056; see also *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir.2008). In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997). In making this determination, the court views the evidence in the light most favorable to the

5

nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

## Discussion

### I. The Trustee Has Proven a Fraudulent Transfer

In order to recover, the trustee must prove that Mr. Kimura (1) made a transfer (2) with actual intent to defraud a creditor. Haw. Rev. Stat. § 651C-4(a)(1). A debtor's admission in a plea agreement that he ran a Ponzi scheme with actual intent to defraud his creditors is conclusive proof of his actual intent. *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008). That issue may not be relitigated. *Id.*

The trustee has proven both elements of a fraudulent transfer. There is no dispute that Kimura transferred $240,000 to Kaminaka. There is also no dispute that Kimura admitted in a plea agreement that he operated a Ponzi scheme with actual intent to defraud his creditors. Thus, the trustee has carried his burden.

### II. Kaminaka's Good Faith Defense

Even if a transfer is fraudulent, Hawaii law protects good faith purchasers. Haw. Rev. Stat. § 651C-8(a). The trustee may not void a transfer if the transferee proves that he took the transfer in good faith and for reasonably equivalent value.

6

*Id.*; *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Technology Group, Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990).

**A.    Value**

I conclude that Mr. Kaminaka gave reasonably equivalent value for the $240,000 transfer in September 2007. A transferee gives "value" when an antecedent debt is satisfied in exchange for the transfer. Haw. Rev. Stat. § 651C-3. Here, Mr. Kimura promised to pay Mr. Kaminaka $480,000 for the property. When he made the $240,000 transfer, Mr. Kaminaka received partial credit on his obligation under the parties' 2006 agreement. This credit constituted "value."

The trustee has four arguments for why Mr. Kaminaka did not give reasonably equivalent value in the parties' 2006 agreement. I do not accept any of these arguments.

First, at oral argument, the trustee argued that Mr. Kaminaka did not give any value for the 2007 transfer of $240,000 because Mr. Kimura was paying for property that he already owned. He appears to argue that because Mr. Kimura had legal title to the property when he agreed to buy it from Mr. Kaminaka under the second agreement in 2006, that agreement was unenforceable for lack of consideration. If the agreement was unenforceable, then Mr. Kimura did not make a payment on an antecedent debt.

7

This argument incorrectly assumes that Mr. Kaminaka had no rights in the property. In fact, Mr. Kaminaka did have rights in the property under the 2004 agreement. Mr. Kimura agreed to sell the property to Mr. Kaminaka and Mr. Kaminaka paid the entire price for the property. Mr. Kimura evidently failed to convey legal title to Mr. Kaminaka, but Mr. Kimura's breach of the agreement does not negate Mr. Kaminaka's rights under that agreement.

Second, and related to his first argument, the trustee argues that the 2004 agreement was an option agreement, that Mr. Kaminaka has failed to establish that he exercised the option, and that therefore Mr. Kaminaka had no rights in the property. This assumes that the 2004 agreement is the only agreement between the parties, but Mr. Kaminaka has testified that there was an oral agreement of sale. The existence of a written option does not preclude the possibility that the parties had a separate contract. Even if there were no oral agreement, the 2004 option agreement was the only agreement, and Mr. Kaminaka did not formally exercise the option, the parties' 2004 agreement would still be enforceable under several theories: promissory estoppel, part-performance, or as an implied contract. *See McIntosh v. Murphy*, 52 Haw. 29, 35-36 (Haw. 1970); *see also Perreira v. Perreira*, 50 Haw. 641, 642-43 (Haw. 1968); *see also Durette v. Aloha Plastic Recycling, Inc.*, 105 Haw. 490, 504 (Haw. 2004).

8

Third, the trustee points out that, when the parties entered into the 2004 option agreement, Mr. Kimura did not own the property. A contract of sale is not unenforceable because the seller does not own the property when the contract is made. An enforceable contract requires only an offer, acceptance, and consideration. *Douglass v. Pflueger Hawaii, Inc.*, 110 Haw. 520, 525 (Haw. 2006). Here, the trustee does not dispute that Mr. Kimura offered to sell the property to Mr. Kaminaka in 2004. The undisputed facts in the case indicate that Mr. Kaminaka accepted the offer. Finally, there was consideration because there was a bargained for exchange: Mr. Kaminaka agreed to transfer auto parts in exchange for the property, and he did in fact transfer $384,848 in auto parts to Wailuku Tire Center by mid-2005. And both parties acted thereafter as if Mr. Kaminaka was the owner of the property.

Fourth, the trustee argues that the value Mr. Kimura paid for the property pursuant to the parties' 2004 agreement did not flow to the debtor's estate, but instead to Wailuku Tire Center, a separate entity. This undisputed fact might justify the avoidance of the transaction as a fraudulent transfer. But the trustee is not seeking to avoid the 2004 transaction.

Therefore, because the 2004 agreement is enforceable, Mr. Kaminaka had rights in the property in 2006, the 2006 agreement is valid, and Mr. Kimura's 2007

9

U.S. Bankruptcy Court - Hawaii   #12-90014   Dkt # 45   Filed 10/23/13   Page 9 of 12

payment was made in exchange for reasonably equivalent value.

**B.     Good Faith**

In addition to proving that he gave reasonably equivalent value for the transfer, Kaminaka must prove that he took the transfer in good faith. Haw. Rev. Stat. § 651C-8(a); *Hayes*, 916 F.2d at 535. A person does not take in good faith when, looking at objective facts, the circumstances would alert a reasonable person to the debtor's fraudulent purpose, and diligent inquiry would have discovered the fraudulent purpose. *Hayes*, 916 F.2d at 535-36.

Mr. Kaminaka argues that he took the transfer in good faith, because he did not know about the Ponzi scheme, he had no reason to know Mr. Kimura was defrauding creditors, and he dealt with Mr. Kimura individually, not with Maui Industrial. In contrast, the trustee argues that were numerous "red flags" that should have put Mr. Kaminaka on notice that something was suspect with his dealings with Mr. Kimura.

I conclude there is an issue of material fact. After Mr. Kimura promised to sell the property to Mr. Kaminaka in 2004, and just months before Mr. Kaminaka finished paying for it, Mr. Kimura used the property as security for a loan from a

U.S. Bankruptcy Court - Hawaii    #12-90014    Dkt # 45    Filed 10/23/13    Page 10 of 12

bank.[1] Ordinarily, this would not be a problem for a buyer, because the seller could use the proceeds of sale at closing to pay off the mortgage. But in this case, Mr. Kaminaka was paying for the property with auto parts, not cash (a medium of exchange which a bank is unlikely to accept), and Mr. Kaminaka had already paid most of the purchase price when Mr. Kimura granted the mortgage. In other words, Mr. Kimura was borrowing money against property he had already agreed to sell, in a transaction that would not yield cash to pay off the mortgage loan. This raises the question of whether a reasonable person would have (1) deduced that Mr. Kimura was desperate for cash and willing to engage in sharp practices, (2) made further inquiries, and (3) discovered that Mr. Kimura was systematically defrauding his creditors. These questions cannot be answered on the present record.

\* \* \*

For the reasons stated above, the trustee's motion is GRANTED IN PART as to the avoidability of the transfer, Mr. Kaminaka's motion is GRANTED IN PART on the issue of reasonably equivalent value given in exchange for the transfer, and both motions are DENIED on the question of whether Mr. Kaminaka took the

---

[1] Incidentally, at the hearing, Mr. Kaminaka's attorney explained that Mr. Kaminaka knew that the individual responsible for lending Mr. Kimura the money was fired because of the transaction.

11

transfer in good faith.